IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   JUN 3 0 2005   ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ELISHA TORRES,

                Petitioner,

-against-

R. WOODS, Superintendent,

                Respondent.

-------------------------------------------------------------X

04 CV 5560 (ARR)

**NOT FOR ELECTRONIC OR PRINT PUBLICATION**

**OPINION AND ORDER**

ROSS, United States District Judge:

The pro se petitioner Elisha Torres ("Torres" or "petitioner") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 17, 2004. Petitioner contends that: (1) he was denied his due process right to a fair trial by the trial judge's refusal to suppress his identification; and (2) he was denied his due process right to a fair and impartial jury by the trial judge's denial of counsel's challenge for cause during voir dire. For the reasons set forth below, the court denies the instant petition for a writ of habeas corpus.

## BACKGROUND

On November 22, 1999, petitioner, then a teenager himself, robbed two teenagers at gunpoint. Petitioner was convicted in Supreme Court, Queens County on November 13, 2000 of two counts of robbery in the first degree, robbery in the second degree, two counts of criminal possession of a weapon in the second degree, two counts of criminal possession of a weapon in the third degree, two counts of criminal possession of stolen property in the fifth degree, and endangering the welfare of a child. He was sentenced to twenty years'

1

imprisonment. Petitioner appealed his conviction to the Appellate Division, arguing that: (1) his identification should have been suppressed because the pre-trial lineup procedure was unduly suggestive in that some of the fillers were appreciably older than petitioner and materially different in appearance; (2) he was entitled to a new trial because the trial court had deprived him of his right to an impartial jury when it denied petitioner's challenges for cause with respect to two prospective jurors; and (3) his sentence was excessive in light of his age and disadvantaged background. By order dated October 14, 2003, the Appellate Division affirmed petitioner's conviction. People v. Torres, 309 A.D.2d 823 (2d Dep't 2003).

The Appellate Division addressed each of Torres's claims on the merits. First, it ruled that the lineup leading to his identification was not unduly suggestive, determining that "[t]he fillers were sufficiently similar to the defendant in appearance such that there was no substantial likelihood that he would be singled out for identification." Id. at 824. Second, the court ruled that "[t]he sentence imposed was not excessive." Id. Finally, referring to petitioner's claim that he had been denied his right to an impartial jury, the court held that petitioner's "remaining contention is without merit." Id.

Petitioner thereafter sought leave to appeal to the New York Court of Appeals, which was denied by order dated January 26, 2004. People v. Torres, 1 N.Y.3d 602 (2004). Petitioner then sought reconsideration of his application, which was denied by order dated April 23, 2004. People v. Torres, 2 N.Y.3d 765 (2004). Petitioner's conviction became final on approximately July 23, 2004, ninety days after the Court of Appeals denied his motion to reconsider. Torres thus filed his petition within the one-year statute of limitations.

## DISCUSSION

2

I.  AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court...should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required...the increment need not be great;

3

otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted). This deferential standard applies whenever the state court has adjudicated the federal claim on the merits, even if it did not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as the decision finally resolved a party's claims and was based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

II.  Merits of Petitioner's Claims

The state court denied both of petitioner's claims on the merits. The first of petitioner's claims, that the state court should have suppressed his identification, would normally be subject to AEDPA's deferential standard of review, and petitioner would only be entitled to habeas relief on this claim if the state court's determination was contrary to or involved an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Petitioner's second claim, that the trial judge empaneled an impartial juror, is a factual issue normally subject to the presumption of correctness under 28 U.S.C. § 2254(e)(1).

A.  Suppression of Identification Claim

Petitioner claims that he was denied his due process right to a fair trial by the trial judge's refusal to suppress identification evidence. Specifically, petitioner claims that he was identified in a lineup composed of fillers who were either appreciably older than him or whose appearance, in terms of facial hair and complexion, was significantly different.

In United States v. Wade, the Supreme Court recognized that there is a "grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of

4

reconstruction at trial," 388 U.S. 218, 236 (1966), and that to protect a defendant's Sixth Amendment rights the trial court must ascertain prior to trial whether a witness's identification testimony is tainted by an improperly made identification. The Court has established a two step inquiry for evaluating the constitutional permissibility of in-court identification testimony based on out-of-court identification procedures, "requiring a determination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise 'a very substantial likelihood of irreparable misidentification.'" Jackson v. Fogg, 589 F.2d 108, 111 (2d Cir. 1978) (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972) (citing Simmons v. United States, 390 U.S. 377, 384 (1968))). Even if pretrial procedures have been unduly suggestive, a court may nonetheless admit in-court identification testimony under certain conditions. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possess sufficient aspects of reliability." Manson v. Brathwaite, 432 U.S. 98, 106 (1977).

"If the pretrial process was unduly suggestive, the court must then weigh the corrupting effect of the suggestiveness against other factors indicating that the identification may be independently reliable." Raheem v. Kelly, 257 F.3d 122, 135 (2d Cir. 2001) (internal quotations and citation omitted). The Supreme Court has stated that "reliability is the linchpin in determining the admissibility of identification testimony," and that the factors to be considered in determining reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time

between the crime and the confrontation. 432 U.S. at 114. The question of independent reliability must be assessed in light of the totality of the circumstances. Biggers, 409 U.S. at 199.

Of relevance to the first step of the analysis, the Second Circuit has stated that "[a] lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem, 257 F.3d at 134. "Lineups in which suspects are the only participants wearing distinctive clothing or otherwise matching important elements of the description provided by the victim have been severely criticized as substantially increasing the dangers of misidentification." Id. (quotation marks and citation omitted). "There is no requirement," however, that "in line-ups the accused must be surrounded by persons nearly identical in appearance." United States v. Reid, 517 F.2d 953, 965n.15 (2d Cir. 1975). Rather, "a reasonable effort to harmonize the line-up is normally all that is required." Douglas v. Portuondo, 232 F.Supp.2d 106, 112 (S.D.N.Y. 2002) (citations omitted).

In the instant case, while petitioner was seventeen years old and the fillers were in their twenties, Hearing Transcript at 27-28, the arresting officer testified at petitioner's Wade hearing that the fillers fit petitioner's general description. Id. at 28. The trial court found that the "stand-ins were similar to the defendant in terms of facial hair, skin coloring, and physical characteristics" and further indicated that "[t]he fillers did not appear to be glaringly dissimilar from the defendant." O'Dwyer Report at 20-21. While the court noted that the fillers were "somewhat older than the defendant," it concluded that "they did not appear to be so dissimilar from him as to 'single him out'" and that "any age discrepancy between the defendant and most of the fillers was 'not apparent to the viewer.'" Id. at 21-22. Finally, the trial court noted

that "the fact that the defendant was wearing a white shirt and was the only one in the lineup so dressed does not render the lineup unnecessarily suggestive, for a white shirt did not 'figure prominently' in the description provided by the witnesses." Id. at 24. In fact, the arresting officer testified at petitioner's Wade hearing that Kevin Mayers, one of petitioner's robbery victims, had described the perpetrator's physical characteristics and indicated that he was "wearing a gray wool hat, blue jeans, blue sneakers, blue and black jacket vest." Hearing Transcript at 10.

On appeal, the Appellate Division held that "the lineup was not unduly suggestive," finding that "[t]he fillers were sufficiently similar to the defendant in appearance such that there was no substantial likelihood that he would be singled out for identification." 309 A.D.2d at 823-24. The court further held that "[t]he fact that the defendant was the only one in the lineup wearing a white shirt was not so unduly suggestive of his identity as to create a substantial likelihood of irreparable misidentification because there is no evidence that the defendant's clothing figured prominently in the complainant's description of the perpetrator." Id. at 824.

The court has reviewed a photograph of the lineup, taking into account Mayers' description of the perpetrator as a sixteen-year-old, light-skinned black male of medium build with a mustache. Hearing Transcript at 9-10. The photograph reveals that only two of the lineup participants could be said to have a light complexion. Petitioner's Ex. B. Moreover, only one of those participants has a mustache and appears to be a teenager. Id. The court need not determine, however, whether petitioner met the description of the perpetrator while the other lineup participants did not or the police officers made a reasonable effort to find fillers

7

matching the perpetrator's general description, because the identifications were independently reliable under the totality of the circumstances, satisfying the second prong of Neil v. Biggers. Because the state court ruled only on the first prong of Neil v. Biggers, finding that the identification was not impermissibly suggestive, the court must consider de novo whether the identification process was so suggestive as to raise a substantial likelihood of irreparable misidentification. See Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003) (claim is reviewed de novo where the state court did not adjudicate it on the merits).

Kevin Mayers, a robbery victim, and Bobby Voulgarakis, who had witnessed the robbery of Thomas Meyer, identified petitioner in the pre-trial lineup and at trial. Both had ample opportunity to observe petitioner during the commission of the crimes. Mayers was robbed at approximately 9:10 in the morning inside a bus terminal, where the lighting conditions were bright. Id. at 662. Mayers had ample time to observe petitioner because petitioner briefly engaged him in conversation before robbing him. Id. at 661-62. Voulgarakis knew petitioner before the robbery. Voulgarakis and petitioner had previously attended the same high school, where Voulgarakis saw petitioner on a number of occasions. Transcript at 619-20, 648. Moreover, petitioner spoke with Voulgarakis immediately before robbing Meyer at gunpoint, id. at 621, and Voulgarakis witnessed that robbery from a distance of approximately five to six feet. Id. at 621-23. The robbery occurred outside at approximately 12:25 in the afternoon, in broad daylight. Id. at 619. The evidence indicates that each witness had ample opportunity to view the robber and that each witness's degree of attention was sufficient to make the identifications reliable. Voulgarakis testified that he knew the robber,

and Mayers could identify the color of the robber's shoes, pants, jacket, and hat, as well as his general physical appearance.

The descriptions given by Mayers and Voulgarakis further indicate that their identifications of Torres as the robber are reliable. Mayers gave the police a detailed description of the perpetrator as a light-skinned black teenager with a mustache, identifying several articles of clothing, shortly after he was robbed. While Mayers did not provide a detailed description of petitioner's face, his overall description was sufficiently detailed to enable officer Negron to apprehend petitioner. Hearing Transcript at 9-12. The court also notes that Voulgarakis testified that, when he reported the robbery to school authorities, he indicated that the perpetrator had a five to six inch scar on his face, although no corroborative testimony was presented at trial. Transcript at 638. In any event, Voulgarakis had seen Torres on many occasions. Id. at 653.

As to the level of certainty demonstrated at the confrontations, no evidence in the record suggests that either witness was ever uncertain about his identification. To the contrary, each witness identified petitioner within a very short period of viewing the lineup. Hearing Transcript at 28, 57.

Finally, the length of time between the crimes and the confrontations is further indication of reliability. Each witness identified petitioner in a lineup conducted the day following the robberies. The court has no reason to conclude that this brief passage of time undermines the reliability of either witness's identification.

Whether or not the state court's determination that the pre-trial identifications were not unduly suggestive involved an unreasonable application of Supreme Court precedent, habeas

relief is not warranted on this claim as the totality of the circumstances surrounding the identifications of petitioner possess sufficient aspects of reliability. This is especially so considering that Voulgarakis, the eyewitness, had seen petitioner on a number of occasions before the incident. Having conducted a <u>de novo</u> review of the record, the court concludes that the reliability of prompt identifications by a victim and an eyewitness, each of whom conversed with the perpetrator in broad daylight, outweighs any suggestive aspects of the lineup identifications in this case.

B. <u>Impartial Jury Claim</u>

Petitioner claims that he was denied his due process right to an impartial jury by the trial judge's denial during voir dire of one of defense counsel's challenges for cause. Specifically, petitioner argues that the trial judge should have granted counsel's challenge with respect to a prospective juror, who became juror number twelve, "who questioned whether a witness who takes an oath could lie." Petition at 7.

The Sixth Amendment to the United States Constitution provides that an "accused shall enjoy the right to a speedy and public trial, by an impartial jury." This right is protected against state action by the Fourteenth Amendment. See <u>Duncan v. Louisiana</u>, 391 U.S. 145 (1968). "'In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process.'" <u>Morgan v. Illinois</u>, 504 U.S. 719, 727 (1992) (quoting <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961)). A fair and impartial jury is therefore a basic requirement of due process. See <u>id.</u>; <u>Gentile v. State Bar</u>, 501 U.S. 1030, 1075 (1991).

Under 28 U.S.C. § 2254(e)(1), however, the state court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial, rebuttable by clear and convincing evidence. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 813 (2d Cir. 2000); Knapp v. Leonardo, 46 F.3d 170, 176 (2d Cir. 1995). "'[T]he trial court's findings of impartiality [may] be overturned only for "manifest error."'" Id. (quoting Patton v. Yount, 467 U.S. 1025, 1031 (1984)).

In the instant case, during the court's examination of prospective juror Jocelyn Cange, when asked whether she could "use [her] common sense and [her] experience in life to determine whether anybody is being accurate or telling the truth or not," the prospective juror indicated that she could. Tr. at 510. The colloquy to which petitioner objects occurred during defense counsel's voir dire and is as follows:

\* \* \*

MS. CALLENDER: Now, this has been asked already but I'd like to ask it again. There's going to be people who take the witness stand. They're going to take an oath. They're going to swear to tell the truth, the whole truth, and nothing but the truth. Is there anyone who thinks that just because a person takes that oath, that everything they say has to be true?

\* \* \*

MS. CALLENDER: Okay. Miss Cange?

PROSPECTIVE JUROR: Sometime. If you swear, I think it has to be the truth.

11

| MS. CALLENDER: | So you think that no one would ever swear to tell the truth, and then not tell the truth? |
|---|---|
| PROSPECTIVE JUROR: | Yes, I think so. |

* * *

Tr. at 541-542.

Thereafter, when defense counsel asked about "a police officer coming into court, taking the oath, and lying during his testimony," id. at 544, Ms. Cange said that "[i]t could happen." Id. at 545. Defense counsel then asked "[d]oes anyone not think that a civilian witness could get on the witness stand and be mistaken about their testimony," exaggerate, or lie. Id. The transcript reflects that all prospective jurors nodded their heads or answered each question affirmatively. Id.

At the close of voir dire, defense counsel challenged Ms. Cange for cause on the ground that she had indicated that "she believes that a person who takes the oath would tell the truth." Id. at 558. The court indicated that it did not "recall her saying that" and denied the challenge. Id. As defense counsel had already used her peremptory challenges, Ms. Cange was among those empaneled.

Although the trial court was clearly mistaken in its recollection of Ms. Cange's responses during voir dire, raising a question as to whether its ruling should be presumed correct, this court need not determine what standard of review applies as it would reach the same conclusion whether it applied the presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1), reviewed the claim under AEDPA's deferential standard, or considered the claim de novo. While the prospective juror had, in fact, indicated that a person under oath would tell

12

nothing but the truth, her initial response to the court's questioning and her subsequent answers to defense counsel's questions indicate that she was prepared to make credibility determinations of witnesses testifying under oath. She indicated her belief that a police officer could lie under oath and that a civilian witness could be mistaken in his testimony and even exaggerate or lie under oath. These answers substantially clarified that she would make credibility determinations rather than simply believe any testimony given under oath.

Having reviewed the voir dire transcript in toto, the court concludes that petitioner was not denied his right to an impartial jury. The Supreme Court has indicated that the trial court's findings of impartiality may be overturned only for "manifest error." Patton, 467 U.S. at 1031. While the record reveals that the trial court suffered a failure of recollection during voir dire, the court cannot conclude, in light of the totality of the juror's responses, that the denial of defense counsel's challenge for cause constituted "manifest error." Habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted, since the petitioner failed to make a substantial showing of a denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: June 24, 2005
Brooklyn, New York

SERVICE LIST:

Petitioner *Pro Se*
Elisha Torres
00R4672
Upstate Correctional Facility
P.O. 2000/309 Barehill Road
Malone, NY 12953

Attorney for Respondent
Traci R. Wilkerson
Queens County District Attorney's Office
125-01 Queens Blvd.
Kew Gardens, NY 11415-1568